IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES V. SWEIGER, | )  |
| Plaintiffs | ) Civil Action No. 2:11-cv-1631 |
| v. | ) Judge Mark R. Hornak |
| CALVARY PORTFOLIO SERVICES, LLC, and GORDON & WEINBERG, P.C. | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Before the Court is the Amended Motion to Compel Arbitration and Stay Proceedings Pending Arbitration, filed by Calvary Portfolio Services, LLC and Gordon & Weinberg, P.C. ECF No. 20. The Court has reviewed Plaintiff Charles Sweiger's Complaint, the Defendants' Amended Motion, and the various briefs and materials filed in support and opposition to this Motion. ECF Nos. 1, 20-25. For the reasons that follow, Defendants' Motion to Compel Arbitration is granted.

### *I.   BACKGROUND*

Plaintiff Charles Sweiger ("Sweiger") brings claims against Defendants Calvary Portfolio Services, LLC ("Calvary"), and Gordon & Weinberg, P.C. ("Gordon") (collectively "Defendants") for an alleged violation of the Fair Debt Collection Practices Act (the "FDCPA"), specifically 15 U.S.C. § 1692e(1), and for Wrongful Use of Civil Proceedings under Pennsylvania law, 42 Pa. C.S.A. § 8351, commonly known as the "Dragonetti Act." Sweiger originally filed his action in the Court of Common Pleas of Allegheny County,

1

Pennsylvania, and Defendants removed to this Court on the basis of federal question jurisdiction on December 22, 2011. ECF No. 1.

Sweiger's claims arise from an alleged false affidavit that was filed in a state court civil action brought against him on December 3, 2010, by Gordon and on behalf of Calvary, in the Court of Common Pleas of Allegheny County, Pennsylvania (the "Debt Action"). Calvary, through Gordon, sought to recover upon an outstanding debt allegedly owed by Sweiger to Calvary. The Complaint against Sweiger relied upon the affidavit of one of Calvary's agents, Kristina D. Pagni. Pagni represented in her affidavit that she had "personal knowledge of the facts and circumstances in connection with the [Debt Action]." Compl. Ex. A ¶ 2, ECF No. 1-1. Sweiger claims this statement was false, and, furthermore, is the product of a practice called "robo-signing." Compl. ¶ 22, ECF No. 1-1. A collection agency engages in "robo-signing," according to Sweiger, when an agency representative executes hundreds of similar affidavits in a short time period. *Id.* ¶ 13. Sweiger also alleges that Pagni's affidavit was not properly sworn, in that (1) it was not signed in the notary's presence and (2) the notary later signed the document despite knowing that Pagni lacked personal knowledge regarding the Debt Action.

In this action before this Court, Defendants filed a Motion to Compel Arbitration and Stay Further Proceedings Including Discovery or, in the Alternative to Dismiss Plaintiff's Complaint, claiming, among other things, that Sweiger is bound by the terms of an arbitration agreement that was incorporated by reference into Sweiger's original, underlying, credit agreement. It was the debt incurred on this credit agreement that Calvary sought to recover in the Debt Action.

At the top of the arbitration agreement, the following language appears in bold capital letters:

> **THIS ARBITRATION AGREEMENT PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND CERTAIN OTHER PERSONS ON THE ONE HAND AND LENDER AND CERTAIN OTHER PERSONS ON THE OTHER HAND, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.**

In a response to this Motion and at oral argument, Sweiger challenged Defendants' Motion on the premise that Defendants' could not prove that a valid arbitration agreement was in effect between the parties in this case, because Defendants could not produce evidence showing that Sweiger's credit account was one of the numerous accounts assigned by the original creditor, CitiFinancial Services, Inc. ("CitiFinancial"), through an entity entitled "Calvary SPV I, LLC," and finally to Defendant Calvary. Indeed, at the time of oral argument, Defendants seemingly could not definitively show that they held Sweiger's account by assignment, because Defendants' exhibits relating to the alleged series of assignments were either heavily redacted to protect confidential information or contained unidentifiable information in the form of an unexplained, computer printout.

Because of the strong federal policy favoring arbitration, see *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 450 U.S. 1, 24 (1983), and to assure that disposition of these matters occurred on a complete record, the Court granted Defendants' oral motion to amend their Motion to Compel and permitted the filing under seal of several documents containing confidential information in unredacted form. ECF Nos. 20, 22, 23. Now,

Sweiger contends that, even in its amended form, Defendants' Motion does not provide sufficient admissible evidence to show that his credit account (and the accompanying arbitration agreement) was assigned to Calvary. This is Sweiger's sole argument against compelling arbitration at this stage in the proceedings.[1]

## *II.    LEGAL STANDARD*

The Federal Arbitration Act ("FAA") provides that arbitration agreements involving commercial transactions shall be "valid, irrevocable, and enforceable" unless grounds exist "at law or in equity" to revoke the agreement. 9 U.S.C. § 2. Congress enacted the FAA in response to the "widespread judicial hostility to arbitration agreements." *AT&T Mobile, LLC v. Concepcion*, 131 S.Ct. 1740, 1745 (2011). The Supreme Court has held that the FAA's provisions reflect a "liberal federal policy favoring arbitration." *Id.* (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Regarding enforceability, a district court should place arbitration agreements on "equal footing with other contracts." *Id.* The typical suite of common-law contract defenses, such as fraud, duress, or unconscionability, apply to agreements to arbitrate. *Id.* at 1746. Furthermore, regarding the scope of the arbitrable issues, a district court should resolve all doubts in favor of arbitration. *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24-25. In short, if Sweiger has agreed to the arbitration of this dispute via a valid contract, the Court is to enforce that obligation.

## *III.    DISCUSSION*

Since Sweiger contests the existence of a valid agreement to arbitrate due to Defendants' alleged failure to prove that they hold, in essence, the "title" to his credit account via assignment, this Court must apply the relevant state law regarding the formation of contracts to

---

[1] The parties do not dispute that the claims here are included in the scope of the arbitration clause, which is broadly worded.

4

determine if a valid arbitration agreement exists. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). The parties do not dispute that the law of Pennsylvania, the place of the execution of Sweiger's credit account contract, with its incorporated arbitration agreement, applies to this case.

It is basic contract law that only a party to a contract can be bound by that contract. *See Comcast Spectacor, L.P. v. Chubb & Son, Inc.*, No. 05-1507, 2006 WL 2302686 at *19 (E.D. Pa. Aug. 8, 2006). However, a party to a contract can transfer all or some of his rights and duties established by the contract to another person via an assignment of those rights. *See Crawford Central School District v. Commonwealth of Pa.*, 888 A.2d 616, 619 (Pa. 2005). The assignee receiving the rights succeeds to no greater rights than those possessed by the assignor. *Id.* at 619-20. Conversely, "an assignee's rights... are not inferior to those of the assignor." *Id.* at 620. In other words, under Pennsylvania law, an assignee "stands in the shoes of the assignor" with regards to the right or duty assigned. *Id.*

After reviewing Defendants' Amended Motion to Compel, the unredacted, supporting exhibits, and the declaration of Steven Anderson ("Anderson Affidavit"), a custodian of records for Calvary SPV I, LLC, which, among other things, explains the computer-generated report upon which Calvary relies (the "Asset Schedule"), the Court is satisfied that a valid agreement to arbitrate exists between the parties in this case. The record now reflects the following series of events relating to Sweiger's credit account.

First, on August 28, 2007, Sweiger executed a "Disclosure Statement, Note, and Security Agreement" with CitiFinancial's office in Pittsburgh, Pennsylvania. ECF No. 20-5. This contract incorporated by reference the arbitration agreement. ECF No. 20-5, 3-4.

5

Next, on December 22, 2009, CitiFinancial[2] executed a "Bill of Sale, Assignment, and Assumption Agreement" ("First Assignment") with Calvary SPV I, LLC. The First Assignment transfers to Calvary SPV, I, LLC "all of [CitiFinancial's] right, title, and interest in and to the Accounts described in Section 1.2 of the [Purchase and Sale Agreement dated June 25, 2009]." ECF. No. 20-2. Sweiger's account with CitiFinancial was one of the accounts transferred by operation of the First Assignment and Purchase and Sale Agreement. Anderson Affidavit ¶ 11, ECF No. 20-1 (citing to the "Asset Schedule," sealed at ECF. No. 22).

Finally, on December 23, 2009, Calvary SPV I, LLC, in a document entitled "Assignment" ("Second Assignment") transferred the same batch of accounts it received from CitiFinancial, via the Purchase and Sale Agreement, to Defendant Calvary Portfolio Services, LLC, for collection. *Id.* ¶ 13; ECF No. 20-1; ECF No. 20-6.

Sweiger attempts to undermine Defendants' evidence of a valid chain of assignment by challenging the Asset Schedule as being inadmissible hearsay. Relying primarily on the Third Circuits ruling in *United States v. Sokolow*, 91 F.3d 396 (3d Cir. 1996), Sweiger contends that that Defendants must provide some additional verification for the Asset Schedule before the business records hearsay exclusion of Federal Rule of Evidence 803(6) would apply, because CitiFinancial, a third party, was the source of this record. This argument misapplies the *Sokolow* holding. In *Sokolow*, the Third Circuit was concerned that the challenged business records were "derived in part from information provided by outside persons not under a

---

[2] As to Sweiger's argument that there is no additional proof of assignment of his account from "CitiFinancial Services, Inc.," the original signatory to his credit account contract, to "CitiFinancial, Inc.," the signatory to the assignment to Calvary SPV I, LLC, the Court concludes that Sweiger slices that issue far too thin. The uncontroverted record indicates that both companies are, in fact, subsidiaries of CitiGroup, Inc. The definitional provisions of the arbitration agreement, ECF. No. 20-5, state that the "Lender" includes not only "CitiFinancial, Inc." but also all of its past, present, and future parents and affiliates, among many others. Further, the records filed with the Court demonstrate a continuity of Sweiger's account identifiers from start to finish. Based on this review of the record and the supporting exhibits, the concerns advanced by Sweiger that the assignment within the CitiGroup monolith has not been sufficiently buttoned up are without merit, and the Court does not find it necessary to further consider those internal corporate arrangements.

business compulsion," i.e., private individuals seeking benefits. *Id.* Absent the "business compulsion," the company receiving the records needed to show proof of additional verification to assure the "accuracy of the information provided by the outside person." *Id.*

The same accuracy concerns do not exist in Sweiger's case. The Asset Schedule is part and parcel to the Purchase and Sale Agreement executed in the ordinary course of business between two companies. The entire purpose of this document was to maintain a business record of which accounts Calvary SPV I, LLC actually purchased from CitiFinancial. Furthermore, Steven Anderson, the undisputed records custodian, declared under penalty of perjury that "it is the regular practice of Calvary SPV I, LLC when purchasing...accounts, to include within its records of each purchase those documents provided by the seller of the account which the seller represents evidence the account." Anderson Aff. ¶ 6; ECF No. 20-1. Clearly, the "business compulsion" that was lacking in *Sokolow* is present in this case. In all respects, the Anderson Affidavit fulfills with precision the requisites of Federal Rule of Evidence 803(6) for admissibility and supports the "chain of title" of Sweiger's arbitration agreement.

## IV. CONCLUSION

The record before the Court demonstrates that Defendant Calvary Portfolio Services, LLC, is the valid, existing assignee of the contract by which Sweiger agreed to binding arbitration. Both Calvary and its legal representative, Defendant Gordon & Weingberg, P.C.[3], are entitled to the enforcement of the agreement. The claims asserted here fall within the wide sweep of that broad arbitration clause, and no party contends that they are excluded by that clause's terms. The strong federal policy favoring arbitration of disputes covered by the FAA directs the enforcement of the parties' commitment to arbitrate. For the foregoing reasons,

---

[3] As noted earlier, the broad definitional language of the arbitration agreement would also seemingly cover Gordon & Weinberg as an "agent," and no argument is advanced at this stage that the agreement does not cover the claims here against the law firm.

Defendants' Amended Motion to Compel Arbitration and Stay Proceedings Pending Arbitration is granted. This action will be administratively closed, subject to being reopened and restored to the Court's docket in the event further judicial proceedings are required. The Court will issue an appropriate Order.

Mark R. Hornak
United States District Judge

Dated: May 29, 2012

cc: All counsel of record.